No. 41249 November 9, 1959 115 So. 2d 331

RIEGELHAUPT, et al. *v.* OSTROFFSKY, EXECUTOR, ETC.

*Bruinini, Everett, Grantham & Quin; C. Delbert Hose-mann,* Vicksburg, for appellants.

*Teller, Biedenharn & Rogers,* Vicksburg, for appellee.

526

APPELLANT IN REPLY.

McGEHEE, C. J.

The principal question for decision on this appeal is whether or not under the last will and testament of Mrs. Nettie Silverberg Metzger, deceased, of Vicksburg, Mississippi, the appellants Lilyan Riegelhaupt of Philadelpha, Penn., and Hilda Riegelhaupt of New York City, N. Y., nieces by blood of the testatrix, are entitled to have certain real estate which was bequeathed unto them under the said last will and testament to be exonerated by the appellee Gladstone Ostroffsky as executor and residuary legatee of the estate, from the lien on said real estate in favor of the Merchants National Bank & Trust Company of Vicksburg, Mississippi, in the principal sum of $8,000, out of the personal assets of the estate in the hands of the said executor and residuary legatee, instead of the appellants as owners of the said real estate being required to discharge such lien on the property specially devised to them by the will.

The decision of the foregoing question involves both a construction of the will as to the intention of the testatrix and the common law rule to the effect that the debts of a testator or testatrix shall be paid by resort to the money and other personal property of the estate before the realty may be resorted to for that purpose, in the absence of any instruction from the testatrix in her will to the contrary.

The will of Mrs. Metzger was executed on June 24, 1954. The $8,000 note and the deed of trust was for a debt to the bank incurred on July 10, 1956, and the death of the testatrix occurred on June 27, 1957, and her will was duly probated in common form on July 25, 1957.

The will first devised into the said appellants "my property on Cherry St. on the west side between Grove and China" meaning Grove and China Streets in Vicksburg, Mississippi. There were at least five residences on this rental property. Second, the will bequeathed unto the sister-in-law of the testatrix and her husband "Mr. and Mrs. Maurice and Fanny Aschheim $3,000." Third, to Mr. and Mrs. Moses Metzger $1,000. Fourth, to "my nephews Irving and Marian Aschheim, $500 each. Fifth, to "Mr. and Mrs. Max Sinefare of Jamica New York $1,000." Sixth, to "Hylad I give my diamond ear screws." Seventh, to Lillie (meaning the appellant Lilyan) my diamond ring. Eighth, to "my sister-in-law Fanny I give my diamond pin." Ninth, to "Maggie Flowers my good nurse I give the house she is now living in on Farmer St. 1106½." Eleventh, to "The Temple (Jewish Temple in Vicksburg, Mississippi) I give $100." And twelfth, she says the following: "After my will is taken care of I leave to Gladstone Ostroffsky * * * the rest of real my personal property," (Evidently meaning the rest of her real *and* personal property). The will then provides that the same is "to go in effect after my death." It then contains the final provision that "I Nettie Metzger appointed (evidently meaning as executor) Gladstone Ostroffsky to see my will is taken care of, without bond."

From what has been heretofore said, and from the terms of the will, the substance of all of the material provisions having been hereinbefore stated and quoted from, it will be noted that the real estate bequeathed unto the appellants was not encumbered on June 24, 1954, at the time of the execution of the will, but that

the indebtedness hereinbefore referred to of $8,000 in favor of the Merchants National Bank & Trust Company of Vicksburg, Mississippi, was not incurred by the testatrix until July 10, 1956, and that the testatrix gave no instructions whatsoever in the will as to the payment of her debts.

Since a will speaks as of the time of testator's death but the intent of the testator is manifested as of the time when the will is executed, and the real estate devised to the appellants was unencumbered at the time of the execution of the will, we interpret the provision therein that "after my will is taken care of I leave to Gladstone Ostroffsky, * * * the rest of real my personal property," and the further provision that she appointed him "to see my will is taken care of," to mean that the testatrix intended that the said residuary legatee, who was no relation to her by either blood or marriage, should take nothing until the will of the testatrix, including all of the bequests of money and other personal property and the realty devised to the appellants, had been taken care of.

When the testatrix encumbered the real estate devised to the appellants on July 10, 1956, more than two years after the execution of the will, she doubtless intended to pay off this indebtedness from the rental income of this real estate or from other monies of her personal estate, and to thereby exonerate the real property devised unto the appellants and the bequests of money and other personal property to the other legatees therein mentioned, but she did not live long enough to carry out this intention.

Under the common law rule, and we think under her intention shown to have been expressed in the will, she meant that the real estate devised unto her nieces by blood should be exonerated from the lien held by the said bank, and that the bequests of money and other personal assets of her estate, and this is especially true

in the absence of any instructions in her will to the contrary; and that she did not intend that the executor Gladstone Ostroffsky should be entitled to receive the residue of her estate until all of these provisions of her will had been "taken care of."

The trial court held that the appellants were entitled to all of the real estate on Cherry Street between Grove and China Streets, which they claimed, but the trial court further held that the appellants took the said real estate charged with the lien in the principal sum of $8,-000 in favor of the Merchants National Bank and Trust Company at Vicksburg, Mississippi. The chancellor based his decision in part on the fact that the claim of the bank had not been probated within the time and in the manner required by law, and relied primarily for such holding on the cases of Howell v. Ott, 182 Miss. 252, 180 So. 52, and Campbell v. Cason, 206 Miss. 420, 40 So. 2d 258. But in these cases the testator or testatrix expressly limited the authority of the executor to the payment of only such claims as were duly probated and allowed, which was not true in the case now before us.

For instance, in the case of Howell v. Ott, supra, the first item of the will provided that "I desire all my just debts to be paid, *provided they are probated and allowed within the time and in the manner required by law.*" (Itallics ours).

The appellee contends that the two above mentioned cases are decisive of the instant case, since the bank did not see fit to probate its claim within the time and in the manner provided by law. The case of Campbell v. Cason, supra, likewise provided for the payment of the debts by the executor if they were probated and allowed.

As between the bank and the appellants the bank had the right to elect to stand on its security and not probate its claim against the estate. The result of this action would have been that if the real estate on

which the bank held security had not been sufficient to satisfy the claim, the bank could not have looked to the other assets of the estate for the collection of any deficit that there may have been as a result of a foreclosure of the deed of trust, if any.

In the case of Howell v. Ott, supra, Mr. Y. E. Howell was the executor of the estate and his wife was named as the residuary legatee. The executor saw fit not to probate the claim against the estate of the testatrix, Mrs. Cutrer, even though on the trial the proof disclosed that in reality the said executor owned the note and deed of trust on the real estate specifically devised to Ott, and his failure to cause this claim to be probated resulted in the enhancement of the residium that his wife would receive as the residuary legatee of the estate. If this case was correctly decided it enabled the executor to control the matter of whether or not the indebtedness against the real estate devised to Ott should be probated or not. But assuming for the purpose of this decision that that case was correctly decided, it is distinguishable from the case at bar in that the executor was limited by the terms of the will in paying the debts "provided" they were probated and allowed. No such intention is expressed by the testatrix in the instant case as was expressed in the wills involved in the cases of Howell v. Ott and Campbell v. Cason, supra.

■■ ■ The appellee also invokes the provisions of Section 571, Code of 1942, which reads in the caption: "Executor to pay debt, but not unless probated." And the body of the statute reads as follows: "It shall be the duty of an executor or administrator to speedily pay the debts due by the estate out of the assets, if the estate be solvent; but he shall not pay any claim against the deceased, unless the same has been probated, allowed, and registered." But we are of the opinion that since this statute is in derrogation of the common law rule, and must be construed accordingly, it is not in-

tended to apply to the facts in the instant case, and that its primary purpose is to protect the special devisees, legatees and other beneficiaries under the will *inter sese.* A third party holding security against sufficient real estate to satisfy his indebtedness has the right as between a lien creditor and the devisees and legatees to stand on the security for the satisfaction of his claim, but as between a residuary legatee, who is also the executor of the estate, and the special devisees and legatees, it is the duty of the executor and residuary legatee to exonerate the special devices and legacies from the payment of the debts of the estate where the assets thereof are ample for that purpose. 57 Am. Jur., Wills, Sec. 1474, page 993; Eaton, et al. v. McDonald, et al, 145 A. 2d 369; In Re Nawrocki's Estate, (Ore.) 263 P. 2d 363; Benton v. Friar, 171 Miss. 361, 157 So. 356; Anderson v. Gift, 156 Miss. 736, 126 So. 656; and Temple v. First National Bank of Meridian, 202 Miss. 92, 30 So. 2d 605. This principle was expressly stated in 57 Am. Jur., Sec. 1474, page 993.

 It is undisputed that in the instant case Mrs. Metzger left an ample estate for the satisfaction of all of the debts and claims against the estate, and it was the duty of the executor and residuary legatee in the instant case to satisfy and carry out the will as to the special devises of real estate, the legacies of money, and other personal property and to exonerate the same from the claim of any lien or other creditor, and to pay also the debts due unsecured creditors if the same were probated and allowed within the time and in the manner required by law; that in the absence of any instruction in the will to the contrary the debts are required to be paid out of the personal assets belonging to the estate, if sufficient for that purpose, before resort may be had against any real estate as between an executor and residuary legatee and the special devisees of such real estate. Temple v. First National Bank of Meridian, 202 Miss. 92, 30 So. 2d 605.

██ █ In the instant case the $8,000 note in favor of the said bank was not due and payable until two years after date. The executor and residuary legatee kept the semi-annual interest on the note paid out of the general personal assets of the estate, including rentals collected from the real estate devised to the appellants, but the chancellor required on the hearing of the final account that the executor and residuary legatee should pay to the appellants the rents collected on their property, and he correctly held that appellants were entitled to all of the real estate on Cherry Street between Grove and China Streets including a house fronting toward China Street but which was located on a lot on Cherry Street between Grove and China Streets, but as hereinbefore stated he was in error in holding that the appellants took certain real estate subject to the lien of the bank thereon.

██ █ The chancellor approved the final account even though the income and inheritance taxes were not shown by the account to have been paid at that time, or whether any taxes were due thereon on the theory that the final account could be later surcharged with any such taxes as may be shown to be due.

Section 9262-22 of the Mississippi Code of 1942, provides: ''(1) No final account of an executor shall be allowed by any court unless such account shows, and the judge of said court finds that all taxes imposed by the provisions of this act upon said executor which have become payable, have been paid. The certificate of the commissioner and the receipt for the amount of the tax therein certified shall be conclusive as to the payment of the tax to the extent of said certificate.

''(2) For the purpose of facilitating the settlement and distribution of estates held by executors, the commissioner, with the approval of the attorney general may, on behalf of the state, agree upon the amount of taxes at any time due or to become due from such executor under the provisions of this statute, and payment in

accordance with such agreement shall be full satisfaction of the taxes to which the agreement relates.''

However, upon a motion to complete the record filed in this Court on October 3, 1959, the appellee filed as an exhibit to his motion a letter from the Director of Internal Revenue to the effect that it has been determined that there was no estate tax due, and a similar letter from the attorney of the Mississippi State Tax Commission. These letters were filed for the first time long after the final account was approved by the trial court, and except for the written stipulation of the attorneys, both for the appellee and the appellants, filed with this Court which agreed that the motion to thus complete the record may be allowed, we could not consider the letters hereinbefore referred to. But in view of the stipulation it is unnecessary that we hold in this case that the final account could not have been legally approved by the trial court without violating the statute last above quoted. In view of the stipulation hereinabove referred to we do not disapprove the allowance of the final account but hold that on the remand of the case if it be shown that there are other taxes due on the estate not covered by the letters from the Director of Internal Revenue and the State Tax Commission, the final account may be surcharged with such additional taxes to be paid out of the residuary estate. We have concluded that we should reverse and remand the cause and hold that the real estate devised to the appellants should be exonerated from the lien of the Merchants National Bank & Trust Company and from any other taxes, if any, that may be found to be due on remand, and that the appellants should receive the real estate devised unto them free of the said lien and other claims for taxes since it is undisputed that there are ample assets in the residuary estate to pay the same.

Affirmed in part, reversed in part, and remanded.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.